*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

VENESSA DAVIS, JOHN DAVIS, RONALD W.
RADATZ, NEIL J. HAMANN, JACQUELINE A.
HAMANN, DENNIS J. HAMANN, JOSEPH
SHARPE, JR., MICHELLE SHARPE, JOHN A.
ESCHENBERG, II, LEAH ESCHENBERG, TERRY
MERCHANT, TERESA MERCHANT, CHARLES
COGGINS, II, KIMBERLY COGGINS, and
CHARLES COGGINS, III,

UNPUBLISHED
June 18, 2020

Plaintiffs-Appellants,

v

No. 346729
St. Clair Circuit Court
LC No. 16-001197-CE

SUNOCO PIPELINE LIMITED PARTNERSHIP,
SUNOCO LOGISTICS PARTNERS OPERATIONS
GP, LLC, ENBRIDGE ENERGY LIMITED
PARTNERSHIP, ENBRIDGE PIPELINES
LAKEHEAD, LLC, ENBRIDGE PIPELINES
TOLEDO, INC., GREAT LAKES PETROLEUM
CORPORATION, GREAT LAKES PETROLEUM
COMPANY, and GREAT LAKES PETROLEUM
TRANSPORTATION, LLC,

Defendants-Appellees.

Before: GADOLA, P.J., and CAVANAGH and M. J. KELLY, JJ.

PER CURIAM.

Plaintiffs appeal as of right a stipulated order of dismissal without prejudice. On appeal, plaintiffs challenge the trial court order requiring them to amend their complaint to allege a standard of care consistent with the Pipelines Safety Act (PSA), 49 USC 60101 *et seq*., and the trial court order granting defendants partial summary disposition as to some of plaintiffs' nuisance claims. For the reasons stated in this opinion, we affirm in part, reverse in part, and remand for further proceedings.

# I. BASIC FACTS

This case concerns pipelines and pipeline facilities located in Marysville, Michigan, that are owned and operated by defendants.[1] Sunoco owns real property, known as the Tank Farm, located at 250 Murphy Drive in Marysville, where it has petroleum storage tanks for holding petroleum products. Great Lakes, as well as Sunoco, owned real property on Gratiot Avenue in Marysville that was used as an offloading station. Enbridge owned and operated real property, known as the Metering Station, located at 215 Murphy Drive in Marysville. Enbridge also owned and operated two oil pipelines, known as Line 5 and Line 6B, which are pumped through the Metering Station. Plaintiffs are property owners from Marysville whose residences are located near the pipelines and facilities.

Relevant to this appeal, plaintiffs' first amended complaint alleged a claim for nuisance and a claim for negligent nuisance. Sunoco filed a motion for summary disposition arguing that plaintiffs' complaint was preempted by the PSA. Specifically, Sunoco contended that the PSA's preemption provision, 49 USC 60104(c), required plaintiffs to plead a federal standard of care because of the interstate nature of the pipelines and facilities at issue. Plaintiffs responded, arguing that their claims were not preempted but, instead, were "specifically preserved" by the PSA. Plaintiffs added that they could pursue their claims under state law, citing Mich Admin Code, R 336.1901 and St. Clair Township Ordinances, 75.

Following a hearing on the motion, the trial court entered an opinion and order denying Sunoco's motion for summary disposition, but requiring plaintiffs to file an amended complaint. The trial court explained that the pipelines and facilities at issue were "interstate" and, thus, under Section 60104(c) of the PSA, the state of Michigan was "expressly prohibited from adopting or continuing any standards" for defendants' facilities or transportation at issue. The trial court held that, under MCL 483.160, it was "clear that federal law preempts the regulation of interstate pipelines." The trial court concluded that any state tort claim involving safety standards of interstate pipelines or interstate pipeline transportation had to be consistent with "federal standards and regulations provided by the PSA." As a result, the trial court ordered plaintiffs to amend their complaint "to mirror federal standards."

Plaintiffs moved for reconsideration, which was denied. Plaintiffs also filed a second amended complaint. Many of plaintiffs' allegations remained unchanged from their first amended complaint. However, plaintiffs made additional claims, including alleged violations of federal, state, and local regulations, and they asserted that the PSA did not preempt some of their claims.

---

[1] For ease of reference, unless referring to each individual defendant is necessary, we will refer to Sunoco Pipeline Limited Partnership and Sunoco Logistics Partners Operations GP, LLC, collectively as "Sunoco," Great Lakes Petroleum Corporation, Great Lakes Petroleum Co., and Great Lakes Petroleum Transportation, LLC, collectively as "Great Lakes," and Enbridge Energy Limited Partnership, Enbridge Pipelines (Lakehead), LLC, and Enbridge Pipelines (Toledo), Inc., collectively as "Enbridge." When discussing all defendants, we will refer to them collectively as "defendants."

Plaintiffs expressly added allegations of violations of Rule 336.1901 and St. Clair Township Ordinance, 75, § 2(a)(3).

Enbridge filed a motion for partial summary disposition regarding plaintiffs' second amended complaint, seeking dismissal of plaintiffs' nuisance claim and asking the court to strike certain allegations under plaintiffs' negligent nuisance claim because they failed to state a claim. Enbridge argued that plaintiffs ignored the trial court's conclusion regarding preemption when they alleged violations of a state regulation and local ordinance. Great Lakes and Sunoco concurred with Enbridge's motion. In response, plaintiffs argued they properly pleaded the standard of care, explaining that there was "no distinct federal standard of care or state law standard of care." Plaintiffs argued the trial court was bound by Sections 60120(c) and 60121(d) of the PSA, which expressly state that state tort remedies are not preempted by the PSA.

Following oral argument, the trial court partially granted defendants' motion for summary disposition. Plaintiffs' motion for reconsideration was denied, and approximately eight months later, the trial court entered the stipulated final order of dismissal without prejudice. This appeal follows.[2]

## II. SUMMARY DISPOSITION

## A. STANDARD OF REVIEW

Plaintiffs argue that the court erred by ordering amendment of their complaint to add a violation of the PSA standard of care because the PSA savings clause expressly allows tort actions by private persons, which includes plaintiff's common law nuisance and negligent nuisance claims. Relatedly, plaintiffs argue that the trial court erred by summarily dismissing under MCR 2.116(C)(8) some of their claims. Plaintiffs assert that their claims were sufficiently plead and that none of the claims were preempted by the PSA. "Issues of law, such as federal preemption of state law, are reviewed de novo." *Packowski v United Food & Commercial Workers Local 951*, 289 Mich App 132, 138; 796 NW2d 94 (2010). "This Court reviews de novo a trial court's decision on a motion for summary disposition." *Allen v Bloomfield Hills Sch Dist*, 281 Mich App 49, 52; 760 NW2d 811 (2008). "A motion under MCR 2.116(C)(8) tests the legal sufficiency of the complaint on the basis of the pleadings alone to determine if the opposing party has stated a claim for which relief can be granted." *Zaher v Miotke*, 300 Mich App 132, 139; 832 NW2d 266 (2013) (quotation marks and citation omitted). A reviewing court "must accept all well-pleaded

---

[2] In a motion to dismiss filed in this Court, Enbridge contended that because the stipulated order is not a final order, as defined by MCR 7.202(6)(a)(*i*), this Court should dismiss plaintiffs' appeal for lack of jurisdiction. This Court, however, denied the motion, determining that "[t]he November 16, 2018 order is a final order as defined by MCR 7.202(6)(a)(i)." *Davis v Sunoco Pipeline Limited Partnership*, unpublished order of the Court of Appeals, entered September 6, 2019 (Docket No. 346729). In its brief on appeal, Enbridge continues to assert that this Court lacks jurisdiction because the order appealed was not a final order. However, as this Court has already decided that issue on the merits in response to Enbridge's motion to dismiss, we will not again review the challenge to appellate jurisdiction.

allegations as true and construe them in the light most favorable to the nonmoving party. The motion should be granted only if no factual development could possibly justify recovery." *Id*. (citation omitted).

## B. ANALYSIS

The Supremacy Clause of the United States Constitution declares that the laws of the Unites States "shall be the supreme Law of the Land . . . ." US Const, art VI, cl 2. "Under the Supremacy Clause, then, this Court is bound by federal statutes, despite any state law to the contrary." *Packowski*, 289 Mich App at 139. Therefore, "[i]f a state-law proceeding is preempted by federal law, the state court lacks subject-matter jurisdiction to hear the state-law cause of action." *Id*. at 139-140. Although three types of federal preemption exist, *id*. at 140, the only one relevant in this case is express preemption. "Express preemption occurs when a federal statute clearly states an intent to preempt state law or that intent is implied in a federal law's purpose and structure." *Id*.

The purpose of the PSA is "to provide adequate protection against risks to life and property posed by pipeline transportation and pipeline facilities by improving the regulatory and enforcement authority of the Secretary of Transportation." 49 USC 60102(a)(1). Under 49 USC 60104(c),

> A State authority that has submitted a current certification under section 60105(a) of this title may adopt additional or more stringent safety standards for intrastate pipeline facilities and intrastate pipeline transportation only if those standards are compatible with the minimum standards prescribed under this chapter. *A State authority may not adopt or continue in force safety standards for interstate pipeline facilities or interstate pipeline transportation.* Notwithstanding the preceding sentence, a State authority may enforce a requirement of a one-call notification program of the State if the program meets the requirements for one-call notification programs under this chapter or chapter 61. [Emphasis added.]

Thus, as recognized by this Court in *Panhandle Eastern Pipe Line Co v Musselman*, 257 Mich App 477, 482; 668 NW2d 418 (2003), "[f]ederal law preempts the regulation of interstate pipelines." It does not, however, preempt *all* claims having some connection with an interstate pipeline. Instead, 49 USC 60120(c) expressly provides that the PSA "does not affect the tort liability of any person."[3] And 49 USC 60121(d) states, "A remedy under this section is in addition to any other remedies provided by law. This section does not restrict a right to relief that a person or a class of persons may have under another law or at common law." These savings provisions plainly provide that under certain circumstances, a state-law tort claim may be maintained against a defendant notwithstanding the express preemption set forth in § 60104(c).

---

[3] Under the PSA, "person" includes corporations and companies. 49 USC 60101. Therefore, defendants' tort liability is implicated in Section 60120(c).

The United States Supreme Court has held that savings clauses, like the one in the PSA, that preserve substantive claims under state law, "remove[] tort actions from the scope of [an] express pre-emption clause." *Geier v Am Honda Motor Co*, 529 US 861, 868; 120 S Ct 1913; 146 L Ed 2d 914 (2000) (savings clause provided that compliance with a federal safety standard "[did] not exempt any person from any liability under common law"); but see *Morales v Trans World Airlines, Inc* 504 US 374, 387; 112 S Ct 2031; 119 L Ed 2d 157 (1992) (clauses that merely preserve remedies, rather than "general saving clause[s]," cannot supersede substantive preemption provisions). Although savings provisions "make[] clear that [an] express preemption provision does not of its own force pre-empt common law tort actions," conflict preemption must be considered. *Geier*, 529 US at 874. Therefore, courts should "decline[] to give broad effect to savings clauses where doing so would upset the careful regulatory scheme established by federal law." *Id*. at 862 (concluding that a common law "no airbag" claim conflicted with Department of Transportation regulations providing manufacturers with a variety of choices among passive restraint systems and was, therefore, preempted by the federal regulations).[4]

On appeal, plaintiffs assert the trial court improperly found that their nuisance claims regarding air pollution, relying on R 336.1901 and St. Clair Township Ordinances, 75, were preempted by the PSA. As noted above, § 60104(c) of the PSA expressly preempts all state and local laws affecting pipeline safety. See also *Washington Gas Light Co v Prince George's Co Council*, 711 F3d 412, 420 (CA 4, 2013) (The PSA "expressly preempts state and local law in the field of safety"); *Olympic Pipe Line Co v City of Seattle*, 437 F3d 872, 880 (CA 9, 2006) (concluding that the PSA preempted the City of Seattle from enforcing its own more stringent pipeline safety provisions).

Thus, the question is whether the state and local regulations plaintiffs relied on, R 336.1901 and St. Clair County Ordinances, 75, § 2(a)(3), are related to pipeline safety, and, therefore, preempted by the PSA. Rule 336.1901 states:

> Notwithstanding the provisions of any other rule, a person shall not cause or permit the emission of an air contaminant or water vapor in quantities that cause, alone or in reaction with other air contaminants, either of the following:
>
> (a) Injurious effects to human health or safety, animal life, plant life of significant economic value, or property.
>
> (b) Unreasonable interference with the comfortable enjoyment of life and property.

St. Clair Township Ordinances, 75, § 2(a)(3) defines a "nuisance" as an act, or omission to act, by a person that creates or permits:

> (3) Condition[s] which render persons insecure in life or use and enjoyment of their property such as effects and emanations from noise, glare, lights, vibration,

---

[4] Federal decisions are not binding on state courts, but can be considered for their persuasive value. *Abela v Gen Motors Corp*, 469 Mich 603, 607; 677 NW2d 325 (2004).

dust, smoke odor, gas, chemicals, worms, insects, rodents, flies, decaying matter, whether such emanations are natural or result from human or mechanical alteration o[r] manipulation of materials[.]

Based on the language used, it is clear that neither R 336.1901, nor St. Clair Township Ordinances, 75, directly regulate pipelines and pipeline facility safety. They are merely general regulations aimed at ensuring that a property owner's use and enjoyment of his or her property is not negatively affected by air contaminants, R 336.1901, or other emissions, such as noise, dust, gas, or chemicals, St. Clair Township Ordinances, 75, § 2(a)(3).[5] Nothing in the rule or ordinance specifically regulates pipelines or pipeline facilities. And although defendants may complain that the rule and ordinance indirectly affect the safety of the pipelines and pipeline facilities, "[a] local rule may incidentally affect safety, so long as the effect is not 'direct and substantial.' " *Texas Midstream Gas Srvs, LLC v City of Grand Pairie*, 608 F3d 200, 211 (CA 5, 2010), citing *English v Gen Elec Co*, 496 US 72, 85; 110 S Ct 2270; 110 L Ed 2d 65 (1990); see also *Schneidewind v ANR Pipeline Co*, 485 US 293, 308; 108 S Ct 1145; 99 L Ed 2d 316 (1988) ("Of course, every state statute that has some indirect effect on rates and facilities of natural gas companies is not pre-empted."). Therefore, because R 336.1901 and St. Clair Township Ordinances, 75, do not directly regulate pipelines and pipelines facilities, but merely have an insubstantial and incidental effect on them, we conclude that the incidental effect on pipeline safety does not undermine Congress's intent in enacting the PSA. See *English*, 496 US at 85; *Schneidewind*, 485 US at 308. The trial court erred by concluding the PSA preempted plaintiffs' nuisance claims.

Moreover, as the claims being brought were state-law claims, not claims that the PSA was violated by defendants, the court erred by directing plaintiffs to amend their complaint to set forth a federal standard of care under the PSA. As a result, the trial court's dismissal of subparagraphs 40(i) and (j) in Count II of the second amended complaint was erroneous. For the same reason, the court's decision to dismiss parts of Count I's nuisance claim based upon its belief that plaintiffs had failed to plead a federal standard of care is likewise erroneous.

Defendants argue that Section 60121(a) of the PSA bars plaintiffs' claims because they did not allegedly comply with notice requirements, nor file suit for injunctive relief in federal court. The trial court, however, held that § 60121(a) did not bar plaintiffs' claims, and defendants have not filed a cross appeal of that decision. Accordingly, the issue is not properly before this Court and we will not address it.

Finally, we note that in its opinion granting partial summary disposition, the court stated that as it related to the claims against Enbridge set forth in Count I, "Without any specific factual allegations as to how or when Enbridge allegedly caused this nuisance [emissions and spills of petroleum products by virtue of working on the Metering Station], [plaintiffs'] allegation[s were] conclusory and [did] not meet the pleading requirements of MCR 2.111(B)(1)." Plaintiffs have

---

[5] It is worth noting that the United States Supreme Court has held that "[l]egislation designed to free from pollution the very air that people breathe clearly falls within the exercise of even the most traditional concept of what is compendiously known as the police power." *Huron Portland Cement Co v City of Detroit*, 362 US 440, 442; 80 S Ct 813; 4 L Ed 2d 852 (1960).

not challenged this portion of the court's ruling on appeal. Accordingly, we do not disturb this aspect of the court's ruling. The Court also concluded that Count I of plaintiffs' complaint did not contain any allegations relating to Great Lakes and that, as a result, it could only pursue its negligent nuisance claim against Great Lakes. Again, that decision has not been challenged on appeal, so we will not disturb it.[6]

Affirmed in part, reversed in part and remanded for further proceedings  We do not retain jurisdiction.  No taxable costs shall be awarded.  MCR 7.219(A).

/s/ Michael F. Gadola
/s/ Mark J. Cavanagh
/s/ Michael J. Kelly

---

[6] We are aware that, in their brief, plaintiffs assert, broadly, that they sufficiently pleaded their claims against Enbridge, Sunoco, and Great Lakes. However, the nature of the argument was that, as all the nuisance activities occurred intrastate, a federal standard ought not apply to their nuisance claims. Nothing in the brief can fairly be construed as challenging the court's decision to hold that certain aspects of their claim against Enbridge were conclusory and that nothing in Count I of their complaint raised a claim against Great Lakes.